■ In the Matter of WESLEY BROWN, Appellant, v PAUL A. ROLDAN, as Deputy Commissioner of the New York State Division of Housing and Community Renewal, Respondent. [762 NYS2d 605] —Judgment, Supreme Court, New York County (Michael Stallman, J.), entered September 17, 2001, which denied petitioner landlord's application to annul respondent Deputy Commissioner of the Division of Housing and Community Renewal's (DHCR) determination that petitioner's building is not exempt from rent stabilization, and dismissed the petition, unanimously affirmed, without costs or disbursements.

DHCR's finding that the owner failed to demonstrate by a preponderance of the evidence that the subject building contained less than six units on the July 1, 1974 base date is rationally based. The building, located at 118 West 120th Street, in Manhattan, was occupied as a single-room occupancy multiple dwelling (SRO) prior to the mid-1960s and is still listed by the Department of Buildings as an SRO having six or more units. There is no certificate of occupancy for the building. There are no records at either the Department of Buildings or

the Department of Housing Preservation and Development to indicate a conversion to a building of fewer than six units prior to July 1, 1974, the base date. The owner, however, contends that the building was set up as a four-unit dwelling in the 1960s, a fact confirmed by the New York City Department of Finance, Real Property Assessment Bureau in December 1992. The owner relies heavily on a letter, sworn to before a notary public on May 22, 1995, from a Ms. Rowan, a niece of a previous owner who died in 1973, and a former owner herself, which stated:

"I am the former owner of 118 West 120th Street. Prior to the time of my aunt's death in 1973, she occupied the entire house at 118 West 120th Street. After her death the house remained empty until March 1974 when it was leased (3/74 - 3/77) to John Russell Clark, a beneficiary of her estate.

"When the executor of her estate turned the building over to me in 1978, it was occupied by four tenants, each occupying an entire floor. I tried over and over again to register the apartments. I was repeatedly turned away because I had less than six (6) units.

"The building was sold September 15, 1992."

The owner also submitted a copy of a net lease commencing March 15, 1974, which was subsequently extended to March 14, 1977, between the executor of the former owner and Mr. Clark. Under the terms of the lease, the tenant was not permitted, without the consent of the owner, to sublet any portion of the building, a covenant that was breached, as evidenced by a harassment complaint filed in August 1992 by a tenant who took occupancy in December 1974 and who stated that there were four units in the building, two of which were occupied. The tenants submitted, inter alia, an unsworn letter from a Rasheedah Ali, dated March 14, 2000, stating "I and my husband a.k.a John Russell Clark, owned and resided at the 120th Street address from May 1973 until October 1977. At that time there were six rental units." This letter was not referred to in the administrative determination at issue but was cited by the IAS court in support of its finding that a preponderance of the evidence does not show that the building was actually used on the base date as other than an SRO with six or more six units. We affirm.

Resolution of the issue of the owner's claim to an exemption from rent stabilization is made difficult by the fact that neither he nor the tenants can point to any particular piece of evidence that would clearly establish the number of apartment units the subject building contained on July 1, 1974. The logic of the

owner's argument that it is unrealistic to believe that the building went from having one tenant in March 1974 to at least six tenants on July 1, 1974 and then back to four by December 1974, while persuasive, is undone by the fact that the harassment complaint, upon which he relies, speaks of the number of apartments in the building on August 19, 1992, not December 1974. Ultimately, the owner's argument turns on acceptance of the claim that the net tenant did not sublet from the very commencement of his lease, a premise we do not readily accept. In any event, we believe that, in the final analysis, DHCR ruled correctly when it held that the legal usage of the premises is the determining factor. The agency reasonably and rationally reasoned that an illegal renovation cannot be used as a basis to exempt premises from coverage under the Rent Stabilization Law (*Matter of Loventhal Mgt. v New York State Div. of Hous. & Community Renewal*, 183 AD2d 415 [1992]). Concur—Tom, J.P., Andrias, Sullivan, Rosenberger and Friedman, JJ.